UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Docket No.   1:21-cr-10187-MLW |
| DAVID OTH | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant David Oth ("Oth"), by and through undersigned counsel, hereby respectfully submits this memorandum in conjunction with his sentencing scheduled for December 9, 2021. Oth requests this Honorable Court accept the binding Plea Agreement, pursuant to Fed. R. Crim. P. 11(c)(1)(C), and impose a 180-month term of imprisonment, 72 months of supervised release, no fine and order forfeiture as set forth in ¶7 of the agreement. In short, Oth asserts the jointly recommended disposition is "sufficient, but not greater than necessary" to achieve the purposes of the Sentencing Reform Act.

**PROCEDURAL HISTORY**

On February 24, 2021, Oth was charged by criminal complaint with possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841, and possession of a firearm/ammunition, in violation of 18 U.S.C. § 922(g), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). ECF#4. Although a warrant issued for his arrest, Oth voluntarily surrendered himself to federal agents (via prearrangement between his lawyers and prosecuting authorities) on March 2,2021 and was transported to the Donald W.

Wyatt Detention Facility where he has remained detained since[1]. Presentence Report ("PSR") ¶1.[2] Oth's initial appearance was held the following day during which a preliminary and detention hearing was scheduled for March 12, 2021. ECF#12. Almost as soon as he had the opportunity to fully consult with undersigned counsel, Oth expressed his intent to accept responsibility and plead guilty. Indicative of his intent to take full responsibility for his crimes and in furtherance of the parties' nascent plea negotiations, Oth waived his right to a preliminary hearing and as noted above, assented to an order of voluntary detention on May 10, 2021. ECF#25. Similarly, Oth agreed in early June to plead to an information before his written plea agreement with the government had been finalized. ECF#27. Shortly thereafter, on June 23, 2021, the parties executed and docketed a binding plea agreement. ECF#29 (hereinafter cited as "PA").

On August 5, 2021, Oth pleaded guilty before this Honorable Court to a two-count information which charged a conspiracy to distribute and to possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A)(viii), possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. 924(c)(1)(A)(i), and which contained both drug and firearm forfeiture allegations. ECF#27. As a consequence of his plea, Oth faces a ten-year mandatory minimum penalty on the conspiracy charge and a consecutive five-year mandatory minimum penalty on the firearm charge. 21 U.S.C. § 841(b)(1)(A)(viii); 18 U.S.C. § 924(c)(1)(A)(i). The parties jointly recommend that a sentence equal to the mandatory minimum penalties combined—180 months imprisonment—be imposed.

---

[1] Oth agreed to voluntary detention from the outset.

[2] While detained, Oth has not only abstained from misbehavior, but has successfully completed the following five certificate programs offered by Wyatt: Anger Management; Adjustment to Incarceration; Rational Thinking; Criminal Lifestyles; and Living with Others. PSR ¶78.

PA ¶5.

## ARGUMENT

I.  **Applicable Law**

Under *United States v. Booker*, 543 U.S. 220, 259 (2005), the sentencing guidelines are no longer mandatory. The Sentencing Reform Act requires the Court to consider guidelines ranges, *see* 18 U.S.C. § 3553(a)(4), but permits it to tailor the sentence considering other statutory concerns. These concerns include reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, affording adequate deterrence, protecting the public, and effectively providing the defendant with needed educational or vocational training and medical care. 18 U.S.C. § 3553(a). Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense; the history and characteristics of the defendant; the kinds of sentences available; the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. *Id.*[3]

The sentencing court must compute the guidelines, which are the "starting point and the initial benchmark," but which may not be presumed reasonable. *Gall v. United States*, 552 U.S. 38, 49-51 (2007). Then, the court considers the parties' arguments, after which it makes an "individualized assessment based on the facts presented," considering all the factors under 18 U.S.C. § 3553(a). *Id*. Ultimately, the sentencing judge must select a sentence within the statutory

---

[3] Under *Booker,* this Court may consider certain factors that are rejected or ignored by the guidelines. Sentencing courts previously were forbidden from considering, *inter alia*, a defendant's history and characteristics to the extent that they involved his mental and emotional condition, USSG § 5H1.3; her education and vocational skills, *id.* at § 5H1.2; drug or alcohol dependence, *id.* at § 5H1.2; socioeconomic status, *id.* at § 5H1.10; or lack of guidance as a youth, *id.* at § 5H1.12. These factors can now support a sentence outside the guidelines.

3

range that is "sufficient, but not greater than necessary" to satisfy the varied purposes of punishment identified by Congress. 18 U.S.C. § 3553(a); *see also* 18 U.S.C. § 3553(a)(1)-(2).

The First Circuit has summarized the central principles of the post-*Booker* and -*Gall* sentencing procedure described above:

> This sequencing necessitates a case-by-case approach, the hallmark of which is flexibility. In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale. Rather, the court "should consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

*United States v. Martin,* 520 F.3d 87, 91 (1st Cir. 2008) (quoting *Gall*, 552 U.S. at 52).

**II.    Advisory Guidelines Calculation and Applicable Departures**

The parties and U.S. Probation all agree as to the correct calculation of Oth's guidelines sentencing range. PSR ¶¶28-39; PA ¶4(a)-(c). The firearm charge (Count 2) is statutorily mandated to run consecutively with the conspiracy charge (Count 1). 18 U.S.C. § 924(c)(1)(A)(i). Consequently, counts 1 and 2 cannot be grouped. USSG §3D1.1(b)(1). Further, because the offense underlying the firearm charge is the conspiracy charge, any specific offense characteristics for the possession, use, or discharge of a firearm in connection with the commission of the conspiracy charge are not to be applied for purposes of calculating the offense level for that offense. USSG §2K2.4, Application Note #4. Since at least 500 grams but less than 1.5 kilograms of "Ice" is attributable to him,[4] Oth's base offense level as to Count 1 is 34. Oth has clearly

---

[4] Approximately 1,3591.1 grams of a mixture or substance containing d-methamphetamine hydrochloride was seized during the execution of a search warrant at Oth's residence. PSR ¶17. The purity of these drugs tested in excess of 80% and is therefore considered "Ice" under the guidelines. USSG §2D1.1, Drug Quantity Table, Note C.

4

demonstrated acceptance of responsibility for the offense and timely notified the government of his intent to plead guilty, resulting in a 3-level reduction. USSG §3E1.1(a), (b). Oth's total offense level is therefore 31. PSR ¶39. Oth's criminal history score is 5 due to the offenses described in paragraphs 44 and 45 of the PSR, which corresponds to a Criminal History Category III. PSR ¶¶47. The foregoing results in an advisory-guidelines sentencing range of 135–168 months imprisonment as to Count 1; the guideline sentence as to Count Two is the 60-month statutory mandatory minimum for that offense. PSR ¶¶87-89; USSG §2K2.4(b).

### III.   The Requested Sentence Is Sufficient, But Not Greater Than Necessary, To Comply With The Statutory Purposes Set Forth In Under the Sentencing Reform Act.

After determining the guideline range, this Court must consider whether the statutory factors warrant an ultimate sentence above or below the guideline range. *United States v. Jiménez-Beltre,* 440 F.3d 514, 518-19 (1st Cir. 2006). The Supreme Court has emphasized that section 3553(a) is "more than a laundry list of discrete sentencing factors; rather, it is a tapestry of factors, through which runs the thread of an overarching principle." *United States v. Rodríguez*, 527 F.3d 221, 228 (1st Cir. 2008) (citing *Kimbrough,* 552 U.S. at 101). That tenet – the "parsimony principle" – instructs "district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id.* (quoting 18 U.S.C. § 3553(a)). The jointly recommended sentence of 180 months imprisonment followed by 72 months of supervised release amply satisfies those aims.

### A.   Offense Conduct

---

Relatedly, while the PSR describes intercepted communications by Oth which suggest additional drug weight might be attributable to him, *see* PSR ¶10, these drugs were not seized, their type (methamphetamine or Ice) cannot be determined, nor could they be subject to testing/assay. U.S. Probation has therefore recommended, and the parties agree, that these additional quantities ought not be included for purposes of calculating his base offense level. PSR ¶30, n. 1.

The seriousness of Oth's offense conduct is beyond dispute. He served as the conduit of methamphetamine between the gang[5] which supplied him and the street-level dealers who then sold the substance in Maine. In so doing he facilitated the distribution of a dangerous and highly addictive drug and supported the continued operation of an organization with a history of violence, both of which he appeared to recognize in light of the recorded communications described in the PSR. *See* PSR ¶¶14, 23-24. Finally, the quantity of methamphetamine found in his home—nearly 1.4 kilograms—reflects a scale sufficient to poison the community it was destined for, the danger of which was only amplified by two 9mm pistols, one of which bore no serial number, he kept in his home to protect his stash.

### B. Oth's History and Characteristics

Oth is a 32-year-old lifelong resident of Massachusetts. His parents settled in Malden where he was born after they fled Cambodia at the start of the Khmer Revolution. His father worked tirelessly to provide financial support for the family while his mother's hands were full at home. Although Oth reports that he was raised in a loving and supportive environment with no incidents of domestic violence or other illicit activity, parental oversight and control was in ever dwindling supply. His parents were quickly spread thin by their rapidly growing family; Oth was the fourth of nine children. Prototypical tight-knit family—Oth and most of his siblings have continued to live at home throughout their adult lives, pooling resources together and providing for one another.[6] While his upbringing instilled in Oth a clear sense of the importance of family, because of his parents over-taxed attentions, he was exposed, and became succptible, to

---

[5] Tiny Rascal Gangsters ("TSG").

[6] Oth's parent's home was the target of the search warrant which resulted in the seizure of the methamphetamine underlying Count 1 of the information. At the time, Oth was living there with his mother and five of his adult sisters (his father passed away in 2018).

substantially more powerful influences on the "street" at an exceedingly young age.

At 13, he smoked marijuana for the first time. This began the start of a downward spiral into street-level addiction from which he never fully recovered. Barely a year later, he not only began to develop his long—time addiction to Ecstasy but was charged in juvenile court with possessing a firearm with an obliterated serial number. Nine months later, he faced new charges of assault and battery with a dangerous weapon and armed assault to murder. Five months after that, at the age of fifteen, Oth was charged with marijuana possession. Then, in 2006, tragedy struck when his Oth's brother, who was also his closest sibling and best friend, died in his arms outside a house party in Lowell; he had been hit by a stray bullet. As a direct result, Oth struggled with severe depression and was diagnosed with a learning disability that included a "concerning preoccupation with violent themes." This subsequently led to his expulsion from school in the ninth grade. At 18, he was charged with possession of a Class B substance and eventually served his first non-DYS custodial sentence---120 days in a county facility. Following his release, he picked up two new cases, which resulted in his first state prison bid. Although he managed to remain out of trouble for four years following his release—his single longest period without a new charge since age 14—he served a 90-day jail sentence for his role in the beating of a rival gang member.

  C.  **Adequacy of the Jointly Recommended Disposition**

School, sleep overs, family outings, focused parental time and attention, team sports, and organized youth activities tend towards the norm for most Eastern Mass-raised children. However, Oth, who as conditioned early on to equate normalcy with drug use and violence, experienced none of that. Rather, beginning in his late teens, after each time Oth was incarcerated, rather than "making a clean start" he returned to the same local circumstances, the same bad influences in

terms of "friends" and environment, the same lack of structure, and the same ubiquitous availability of drugs. While his probationary conditions often included the condition that he obtain his GED and maintain employment, they were often neglected and unenforced.

      Still, Oth blames no-one but himself for his present circumstances. Moreover, and luckily, his mother's and sisters' unwavering devotion have afforded Oth a dedicated support network. Oth recognizes this and appreciates them much more for it. Though, there remains a substantial need for serious intervention regarding the direction he has taken in his still relatively young life, as well as a mandate for direct supervision. Oth knows this as well; it is why he fully and unequivocally accepts total responsibility for his conduct herein and has agrees to a sentence five times that of the longest "bid" he has ever served. He understands the jointly recommended sentence provides him his best path forward not only towards genuine rehabilitation, but also towards becoming the responsible adult and productive citizen he is always aspired to become. There is no doubt the proposed term of incarceration is of sufficient duration to assure and facilitate Oth's clean, complete, and final break from the people and circumstances that have so thoroughly led him astray. Moreover, he has demonstrated that, when given a chance, he does make use of time wisely such as during the service of his earlier state sentences or his current pretrial detention at Wyatt where Oth has consistently taken advantage of the educational programming offered by the facility in which he is detained. Still, to ensure is continued progress, the jointly proposed sentence also requires he be under the experienced guidance of U.S. Probation for another six years after his release so that, for the first time, he can have the institutional oversight he has desperately needed, and heretofore lacked, to ensure he continues along positive path he has elected by voluntarily pleading guilty herein. For these reasons, the jointly recommended disposition the parties have reached following careful consideration and discussion is amply sufficient, but no

greater than necessary, to achieve the aims of the Sentencing Reform Act.

## CONCLUSION

Based on the foregoing, Oth respectfully requests this Honorable Court sentence Oth to a 180-month term of imprisonment, followed by 72 months of supervised release and forfeiture as set forth in paragraph 7 of the plea agreement. Based on his decades and one-half struggles with addiction and substance abuse, he also respectfully requests this Honorable Court recommend his enrollment in the Bureau of Prison 500 hours substance abuse treatment program (RDAP).

Date:  November 28, 2021

Respectfully submitted,
DAVID OTH
By and through his attorneys,

 /s/ R. Bradford Bailey
R. Bradford Bailey, BBO#549749
BRAD BAILEY LAW, P.C.
44 School St., Suite 1000B
Boston, Massachusetts 02108
Tel.:    (857) 991-1945
Fax:    (857) 265-3184
brad@bradbaileylaw.com

/s/ David R. Yannetti
David R. Yannetti, BBO#549749
Yannetti Criminal Law Defense Firm
44 School St., Suite 1000A
Boston, MA 02108
Tel.: (617) 338-6006

Certificate of Service

I, R. Bradford Bailey, hereby certify that on this, the 28th day of November 2021, I caused a true copy of the foregoing *Defendant's Memorandum in Aid of Sentencing* to be served upon all necessary parties by virtue of electronically filing the same via the court's CM/ECF system.

/s/ R. Bradford Bailey
R. Bradford Bailey